MARTIN BLECK, APPELLEE, V. DINA KELLER ET AL.,
APPELLANTS.

FILED MAY 17, 1905.   No. 13,819.

**Highway: PRESCRIPTION.** To establish a highway by prescription there must be a user by the general public under a claim of right, and which is adverse to the occupancy of the owner of the land, of some particular or defined way or track, uninterruptedly, without substantial change, for a period of time necessary to bar an action to recover the land. *Engle v. Hunt*, 50 Neb. 358.

APPEAL from the district court for Kearney county: ED L. ADAMS, JUDGE. *Reversed.*

*H. M. Sinclair* and *M. D. King*, for appellants.

*Lewis C. Paulson* and *Hamer & Hamer, contra.*

LETTON, C.

This was an action by a road overseer for an injunction to prevent the defendants from obstructing a public highway. The existence of the highway is disputed. The defendant Dina Keller is the owner of the north half of section 23, township 8, west of range 16, in Kearney county, Nebraska, which tract is bounded upon the north by the main channel of the Platte river. The road which it is alleged that defendants obstruct lies along the bank of the Platte river upon the north boundary of this tract. It appears that for over 20 years the public travel coming and going from the west toward the bridge across the Platte near the city of Kearney, on the south side of the Platte river, has been across the lands of the defendant, Dina Keller. The land was open and unfenced until 1887, when a slight fence was erected three or four rods from the river bank, along the north side of the land, by one Williams who was then the owner of the land; but this fence was not maintained, and was soon broken down, destroyed and much of it carried away. It remained open

and uncultivated until after the defendant Dina Keller purchased it in 1893. It seems that during the dry seasons of 1893 and 1894 large quantities of sand were blown from the bed of the Platte river over and upon the strip of land which is in controversy. This sand toward the west end has made this strip difficult of travel in the summer time, and in the winter time large quantities of snow drift from the river bed and pile upon the bank. Owing to these conditions, the public have, since 1894, been in the habit of traveling along this strip for a short distance on the east end of defendants' land, and then breaking or cutting the fence, and driving through to the south side of the fence, a distance varying from 4 to 15 rods, and thence traveling westward entirely across the defendants' land without returning to the strip between the fence and the river. The testimony is somewhat conflicting as to there being travel to any extent along this strip for the whole length of the defendants' land, but it clearly shows that the travel from the east, for the most part, has kept between the fence and the river for a distance varying, according to different witnesses, from 40 to 100 rods; thence breaking through the fence and traveling the remainder of the distance to the defendants' west line in various tracks over the defendants' land. The travel south of the fence, since 1894, has not been confined to any settled track or line, but has moved from one point to another as dry weather or wet weather affects the sand or soil over which the tracks run. It appears that there is a slough to the south of the fence some 10 or 15 rods, and that the travel has mainly been confined to the space between the fence and the slough. For over half the distance across the defendants' land the bulk of the travel has been inside the fence, and the plaintiff relies upon this fact to establish a highway by prescription outside of the fence. No public work has been done upon the alleged road within the limits of the defendants' land, but at some distance east of it, and between the land and the road running south from the bridge, a culvert has been put in

and maintained by public authority. It is contended by the plaintiff that a highway by prescription exists upon the strip of land between the defendants' fence and the bank of the river, which is denied by the defendant. The burden of proof is upon the plaintiff to establish the existence of such highway.

We are of the opinion that the evidence fails to establish a continuous and uninterrupted use of the strip of ground by the public for ten years, adverse to the rights of the owner of the land. Prior to 1887 the land was uninclosed, and the public had been accustomed to travel at will over the premises. This travel was permissive, and could not ripen into a prescriptive right. *Shaffer v. Stull*, 32 Neb. 94; *Graham v. Hartnett*, 10 Neb. 517. The slight fence that was erected in 1887 was soon removed, and the public continued, as before, to go across the land in the same general direction without confining itself to any single and definite highway. It was not until the fence was rebuilt in 1894 that the strip of the land in controversy was exclusively traveled over, and the evidence shows that the travel was only confined thereto for a very short period of time, and that the main portion of the travel since that time has been for the greater distance on the south side of the defendants' fence. Before the erection of the defendants' fence the travel varied from place to place north and south, and was in no definite, particular way or track; and the lands being open and uncultivated no prescriptive right could accrue. This action was begun on September 11, 1903. At that time ten years had not elapsed since the time when the defendants erected the fence, and, as we have seen, no prescriptive right could accrue before that time. But, even conceding, for the purpose of argument, that the land was not open and uninclosed in 1894, the evidence fails to disclose that there had been a user of the strip of land in controversy, or of any particular or defined way or track, uninterruptedly and without substantial change for ten years prior to the beginning of the action. This being so, no highway has

been created by prescription over the strip of land in controversy. *Shaffer v. Stull, supra; Engle v. Hunt,* 50 Neb. 358; *Hill v. McGinnis,* 64 Neb. 187.

We recommend that the judgment of the district court be reversed and the cause dismissed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.