IRA DORMER ET AL., APPELLEES, V. DAVID DREITH ET AL., APPELLANTS.

18 N. W. 2d 94

FILED MARCH 23, 1945. No. 31877.

*Morrow & Miller,* for appellants.

*Auburn H. Atkins, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is an action brought by plaintiffs and appellees to enjoin defendants from preventing the plaintiffs using a road across their land and to quiet title in the plaintiffs to a strip of land 25 feet wide across defendants' land. A hearing was had upon the application, the defendants introducing no evidence, and the court granted a temporary injunction on April 14, 1943, upon the plaintiffs executing an undertaking in the sum of $300. On March 30, 1944, defendants filed their amended answer and a cross-petition praying that plaintiffs be enjoined from using the road. Trial was had. Judgment was entered for plaintiffs.

The defendants and appellants set out seven errors relied upon for reversal, which may be summarized as follows: That the court erred in finding the issues in favor of the plaintiffs, and such decree is not supported by the evidence, and is contrary to the evidence and contrary to law.

The last four assignments of error charge that the court erred in failing and refusing to make separate findings of fact and conclusions of law, as requested, and intermingling findings of fact and conclusions of law, and that the supplemental findings of the court numbered 1 to 7 are contrary to the evidence and to the law, and are erroneous.

In this case the trial began on May 5, 1944, and a journal entry by the judge sets out that he had viewed the premises on that date.

The evidence discloses that the 40 acres of plaintiffs is

the northwest quarter of the southeast quarter of section 34 and, being an inside 40 acres, has no road out to a section line except this road in controversy. The plaintiffs acquired the land in 1937 and the defendants acquired theirs in 1940, so the plaintiffs must depend upon their predecessors to establish any right to the road, and the large amount of evidence was to bring out the use of this road by their predecessors.

When the land was first homesteaded by Richard A. Cawley, he drove out in any direction; he began to farm the land in 1912, while none of defendants' land was farmed until 1916.

In 1916 an irrigation district constructed a ditch on the east side of the defendants' land, and a bridge was erected over this irrigation lateral, and after that bridge was constructed the road over defendants' land ran to that bridge, as they went out to the section line road on the east side of their land. It is admitted that the prescriptive period did not commence to run until the year 1917, as that was when the land was improved, and it was not until that year that those using defendants' land had to farm along this lateral.

Plaintiff Dormer inspected the land and the road before he bought it. Defendant Dreith moved onto his land in 1941, and up to this date there had never been any objection made to those who owned and used plaintiffs' land using this road as their only egress to the section line on the east side of the section, being the shortest way to any section line road.

On the day of the trial the attorneys for the defendants filed a request for separate findings of fact and conclusions of law, as follows:

"Come now the defendants in the above entitled cause at the close of the testimony and prior to the arguments of counsel in said cause, and respectfully request the court to make separate findings of fact and conclusions of law.

"Said defendants further request the court to make specific findings of fact concerning the following:

"1. The date that each owner of defendants' land ac-

quired title thereto and the date when he conveyed said real estate or was entirely divested of his title.

"2. The period or periods of time that plaintiffs' land was occupied by the owner or owners, and the period or periods of time that said land was occupied by tenants of the owner or owners thereof.

"3. The period or periods of time that defendants' land was occupied by tenants of the owner thereof.

"4. The date that the lateral ditch along which the road involved in this case is located, was constructed, and the purposes other than going to and from plaintiffs' land for which said road was used."

In response to such demand for separate findings, the court on May 16, 1944, filed separate findings of fact and conclusions of law. In response to paragraph 1, the court finds that on May 22, 1895, George S. Arnold received a patent from the United States government for land now owned by defendants, and then followed a chain of eleven conveyances, beginning with patentee, giving the date of the conveyance and the grantors' and the grantees' names, and ending with February 24, 1940, when J. L. Witters and wife conveyed said real estate to David Dreith and Anna Dreith as joint tenants and not as tenants in common, being the defendants herein.

In response to paragraph 2 of defendants' request, there are set out by the court certain facts which were stipulated as to ownership of plaintiffs' land, and evidence covering the period from 1911, Richard A. Cawley receiving his patent February 26, 1916, and setting out what the evidence shows as to the owners thereafter, and whether they lived on the premises or not, and what years the evidence failed to show who occupied the premises.

As to paragraph 3, definite answer is made by the court of facts shown by the evidence. As to paragraph 4, answer is set out that the lateral ditch along which the road in this case is located was in use in the year 1917, and that the road along this lateral ditch has been used by the owners and tenants and others in going to and from what is now the

plaintiffs' land, and that it was also used by the Farmers Irrigation District for the purpose of maintaining and inspecting said lateral by its ditch riders, and that it was used as well by the owners and tenants of the defendants' land in connection with all farming operations of that portion of the premises lying north of said lateral and in the harvesting of crops raised thereon by all persons who had occasion to go to that portion of the defendants' land.

Thereafter on May 18, 1944, there was filed by the trial judge supplemental findings of fact and conclusions of law, setting out that the court finds that the plaintiffs have sustained the burden of proof of the user of said road, either by themselves or their predecessors in title, for a period of more than ten years prior to the bringing of this action.

It further finds that on the question of "tacking" there can be no dispute that the road in question has been used by the parties heretofore enumerated for a period of more than 20 years prior to bringing the action, and that the use was open, adverse and notorious, and that by such use a right to use the road by prescription obtained, notwithstanding the fact that no conveyance of plaintiffs' land ever included this road as appurtenant to that land; that it has been held that an easement will pass by deed or grant if it is apparent to an ordinary observer and naturally and necessarily belonged to the premises, and that, while no mention of the road in question has been made in the deeds, the court is of the opinion that the period of a tenant's use can be tacked to the use of the landlord or subsequent owner to complete the period essential to such prescriptive right.

The court further finds that a wagon track, or automobile track, was clearly and definitely defined, and that the south marking of the track from the north bank of the lateral varies from one foot to five or six feet, and that in moving hay sweeps, hay racks, or grain drills, it would be impracticable, if not impossible, to haul them to the plaintiffs' premises along an automobile or wagon track, and the court finds that an easement should be granted to the plaintiffs of 25 feet for the use of said road, the measurement to commence at the north bank of the irrigation lateral.

The court further sets out in its findings that the defendants were not *bona fide* purchasers without notice that plaintiffs and their predecessors had claimed an easement across the land that they were about to purchase, for the tenant testifies that he informed the defendants, while they were yet dealing for the land, that the plaintiffs used said road in going to and from their premises, and that the defendants inspected said land before they purchased it, and the physical facts were so apparent that any one could see as to the use being made of the road.

The court further finds that the evidence does not disclose that prior to March 1, 1940, any owner or tenant of what is now the defendants' land had ever objected to the use of said road by the owners or tenants of what is now plaintiffs' land, and as a matter of fact did not molest the road or its use thereof by any one.

The court was of the opinion that there was more than user alone, and that the user was adverse, as indicated above.

As four of the seven errors assigned for reversal are objections to the court's failing and refusing to make separate findings of fact and conclusions of law as seasonably requested, we have discussed and set out the patient attempt of the trial court to fully comply with said request.

Section 25-1127, R. S. 1943, states that when requested the court shall state in writing the conclusions of fact found separately from the conclusions of law.

It has been held that such a request is a mandatory requirement in a law action tried to the court (*Carl v. Wentz*, 116 Neb. 880, 219 N. W. 390), and it may be helpful in equity actions, such as the one at bar, which depend upon the testimony of many witnesses.

In 1874 Judge Gantt, in discussing this section, said in an opinion: "And notwithstanding, the old settled rules of law, in the determination of actions at law and suits in equity, must, at least in some measure, be observed, yet under our judiciary system, which recognizes but one form of action called a civil action, it seems clear that the re-

quirements of the code of civil procedure, must, so far as applicable, be applied to actions of purely an equitable nature, as well as actions at law. Section 297 of the civil code clearly provides, that in all actions tried by the court, there must be a general finding, and when requested by one of the parties, a special finding." *Sprick v. Washington County,* 3 Neb. 253. See, also, *Donald v. Heller,* 143 Neb. 600, 10 N. W. 2d 447; *Henley v. Live Stock Nat. Bank,* 127 Neb. 857, 257 N. W. 244.

In considering the assignment of error that the decree is contrary to law, the defendants claim that the use of a way across real estate while in possession of a lessee cannot be tacked to the use thereof while in the possession of the owner to make up the period necessary to acquire the right to the use thereof by prescription. The defendants cite the case of *Kramper v. St. John's Church,* 131 Neb. 840, 270 N. W. 478, in reference to tacking the use by one to that of another, in which case the chain of title deeds had all exempted the specific land claimed, which is not the fact in the case at bar.

"Possession of a tract of land by an agent or tenant under adverse holding inures to the benefit of the adverse holder. Personal occupation in such a case is unnecessary. *Lantry v. Parker,* 37 Neb. 353; *McComb v. Saxe,* 92 Ark. 321; *Strom v. Hancock Land Co.,* 70 Or. 101; *Abel v. Love,* 81 Ind. App. 328. And it is held in *Pearce v. Wright,* 284 Ill. 221, that on the issue of adverse possession through a tenant it is immaterial whether the leases were written or verbal. 'Possession through a tenant or agent is of course sufficient actual possession to support the claim of adverse possession.' Tiedeman, Real Property (3d ed.) sec. 493." *Cassens v. Wisner,* 122 Neb. 408, 240 N. W. 526.

It appears in the case at bar that, for a period of twice the required ten years, the previous owners and tenants of the plaintiffs' land have at all times, whenever desired, used the road in question across defendants' land without substantial change. See *Engle v. Hunt,* 50 Neb. 358, 69 N. W. 970. In such a case, the use of it will be presumed to have

been under a claim of right, and not by license of the owner. See *Majerus v. Barton,* 92 Neb. 685, 139 N. W. 208; *Moll v. Hagerbaumer,* 98 Neb. 555, 153 N. W. 560.

It is admitted that the easement for this road from this inside 40 acres to the section line was not mentioned in the many deeds of conveyance on this land from one grantor to another since 1917, yet as this plain, well-used road, being the only road from this homestead on this 40-acre tract, was perfectly apparent to every one, as well as to the grantors and grantees, it naturally and necessarily belonged as an easement to this 40 acres. See *Agnew v. City of Pawnee City,* 79 Neb. 603, 113 N. W. 236; *Neilson v. Leach,* 140 Neb. 764, 1 N. W. 2d 822.

In the decree entered herein, it was found that the acts of the defendants and their predecessors amount to a dedication of the use of said road, and the plaintiffs should have a permanent injunction enjoining the defendants from interfering in any way with the use of said road as used along the lateral and to the bridge over the Farmers Irrigation District on the east of said section, and are estopped and should be enjoined from in any way interfering with the use thereof, or with the plaintiffs' repair and maintenance of said road, and that said road, and the use thereof, is appurtenant to plaintiffs' land, and that the easement for the use of said land is forever quieted in the plaintiffs and in said land, but that said easement is subject to the use of the defendants in their farming operations, including use as a turn row.

However, the court in its decree gave plaintiffs a permanent injunction against defendants' interfering in any way with plaintiffs' use of a road 25 feet in width from the north bank of the lateral No. 2695, etc.

To this the appellants insist that the court has given a road three times as wide as has ever been used, and that the decree of the district court should be modified so as to confine plaintiffs to the use of the road as actually used. There is merit in this contention.

In *Christensen v. Luehrs,* 133 Neb. 50, 273 N. W. 839, this

court limited an easement for a driveway to so much of a strip of ground as is reasonably necessary and convenient for such driveway.

We find in the evidence testimony of owners or tenants who have taken many kinds of farm machinery over this road, including grain drills which are from 7 to 12 feet wide, hay rakes 10 feet wide, and discs 8 feet wide, and one witness said the road used reached from 15 to 20 feet from the ditch bank, but the evidence does not justify granting an easement for a road over 20 feet in width, and the decree is hereby limited to this width, and no more.

Finding no other errors in the record, the decree of the trial court is modified as to the width of the road, and affirmed.

AFFIRMED AS MODIFIED.